IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

_____

SUSAN LIEN,

                      Plaintiff,

     v.                            MEMORANDUM AND ORDER

KWIK TRIP, INC.                  07-cv-457-jcs

                      Defendant.

_____

     Plaintiff Susan Lien commenced this civil action under the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA) in Dane County Circuit Court. Defendant removed the action to this Court. In her complaint plainitff alleges that defendant Kwik Trip, Inc. terminated her employment because of her disability and her age.

     On October 23, 2007 defendant moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, submitting proposed findings of fact, conclusions of law and a brief in support thereof. This motion has been fully briefed and is ready for decision.

     On a motion for summary judgment the question is whether any genuine issue of material fact remains following the submission by both parties of affidavits and other supporting materials and, if not, whether the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  An adverse party may not rest upon the mere allegations or denials of the pleading, but the response must set forth specific facts showing there is a genuine issue for trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party that a jury could return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).


FACTS

For purposes of deciding defendant's motion for summary judgment the Court finds that there is no genuine dispute as to any of the following material facts.

Plaintiff Susan Lien is an adult resident of Wisconsin. Defendant Kwik Trip, Inc. is a Wisconsin corporation that operates gas station/convenience stores in the Upper Midwest including one in Columbus, Wisconsin.

Plaintiff was hired by the defendant on October 16, 1998 at the age of 46 as a retail co-worker at its Columbus, Wisconsin store.  Her supervisor was Store Leader Jeff Blease.

Plaintiff has fibromyalgia which she manages with rest, pain medication, pain injections, ice and heat wraps and physical therapy.  On April 18, 2000 Kwik Trip received a note from a Rehabilitation Supervisor at the Madison, Wisconsin VA Hospital indicating that plaintiff had a chronic back condition and needed to sit 10 minutes per hour and to avoid lifting in excess of ten pounds.

Plaintiff cannot walk for more than a few blocks at a time without assistance from a walker.  When she walks for exercise she uses a walker that has four wheels and a seat.  She must sit on the seat every couple of blocks.

On February 16, 1999 plaintiff received her 90 day performance review.  She was rated "fully meets standards" in the areas of customer service, appearance, dependability, accuracy, job knowledge (inventory control), safety, communication and job interest.  She was rated "often exceeds standards" in job knowledge (store presentation) and productivity.  She was rated "meets some standards" in the team player category.  Her overall performance was rated as "fully meets standards" and she received a raise to $8.35 an hour.

On May 19, 1999 plaintiff received her six month performance update. She received "fully meets standards" ratings in appearance, dependability, accuracy, inventory control, store presentation, safety and job interest. She received "often exceeds standards" in customer service and communication. She received "meets some standards" in the categories of productivity and team player. Plaintiff received a raise to $8.40 an hour. She was advised that her goals were "to be more familiar with the countermat price changes and to have them completed before morning's business" and "to be more positive about criticism and bring problems about things to management."

On August 11, 1999 Kwik Trip issued plainitff a written counseling notice advising her that two customers complained about her attitude and referencing notes plaintiff had left criticizing a co-worker's performance.

Plaintiff received an annual performance review on October 30, 1999. She received "fully meets standards" ratings in all categories except productivity and store presentation. She received ratings of "meets some standards" in productivity and "often exceeds standards" in job knowledge (store presentation). She received a raise to $8.90 an hour. Her goals were to learn some of the opening paper work and to learn to frost donuts and rolls.

In her 2000 performance review plaintiff received "fully meets standards" ratings in all categories except productivity, team player and job interest. She received "meets some standards" in these categories. She received a raise to $9.15 an hour.

In 2001 she received "fully meets standards" ratings in all categories except productivity. She received a rating of "meets some standards" in this category. She received a raise to $9.50 an hour.

In 2002 plaintiff received "fully meets standards" ratings in all categories except accuracy and inventory control, productivity and team player. She received "often exceeds standards" ratings in accuracy and inventory control and "meets some standards" ratings in the productivity and team player categories. She received a raise to $9.65 an hour. In her performance review Blease wrote as follows, "Sue we really need to look at your physical condition and see what we can do to make you more comfortable but at the same time get the job duties done and service our customers."

In her 2003 performance review plaintiff received "fully meets standards" ratings in all categories except customer service, productivity, accuracy, inventory control, and safety and sanitation. She received "meets some standards" ratings in customer service and productivity. She received "often exceeds standards" ratings in accuracy, inventory control, and safety and sanitation. She received a raise to $10.00 an hour.

5

Plaintiff's supervisor Blease noted "we need you to be a little more upbeat and try to forget about those bad feet and aching back..."

At the beginning of June 2004 Sheila Robson began supervising plaintiff. Plaintiff received a written disciplinary notice from Robson on August 16, 2004 for not completing a required task and arguing with a co-worker. Plaintiff responded that this was because her co-worker April (age 21) did not help her. April did not receive a written disciplinary notice for this incident. Robson made plaintiff switch to second shift from third shift whenever April was working third shift. April was not required to change shifts.

On November 24, 2004 plaintiff received her performance review. She received "meets some standards" ratings in all categories except personal appearance, sanitation and safety and communication. She received "fully meets standards" in these categories. She received an Overall Performance rating of "meets some standards". Plaintiff wrote on her performance review. "I'm hoping after receiving my pain injection for my back I will be able to work faster and be more happy."

One of the goals Robson listed on plaintiff's performance review was to limit her breaks to one in a four hour period. Robson advised plaintiff that she could re-evaluate her progress again in 60 days and if her performance did not improve her employment would be terminated.

On December 22 and 23, 2004 plaintiff was disciplined for leaving the store in the middle of her shift without proper authorization.  Robson personally observed plaintiff's performance and found it to be unsatisfactory.

Robson received customer complaints about plaintiff.  Two of these complaints were in plaintiff's personnel file.  One complaint contained the following note: "Chuck-This along with other complaints about Sue allowed us to terminate her.  She is gone.  Thanks, Gary."  The second customer complaint which had been signed by Jon Van Abel included the following note: "Chuck: This is Sue also-up Sheila has talked to this lady and Sue is gone. Gary." These notes were placed in plaintiff's file after she was terminated.

Robson rated plaintiff's overall performance on January 26, 2005 as "does not meet standards."  Robson terminated plaintiff's employment the same date.

Diane Ballweg, plaintiff's former co-worker at Kwik Trip, believed that she and plaintiff were terminated by Robson because of their age.

MEMORANDUM

Plaintiff claims that the defendant terminated her because of her disability.  The Americans with Disabilities Act (ADA) requires employers to reasonably accommodate a qualified individual with a

disability.  42 U.S.C. §12112(a), and prohibits discrimination on the basis of a disability.

A disability is defined as a physical or mental impairment which substantially limits one or more of a person's major life activities.  42 U.S.C. §12102(2).  These activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.  29 C.F.R. §1630.2(j).

In <u>Roth v. Lutheran General Hospital</u>, 57 F. 3d 1446, 1454, (7th Cir. 1995), the Court held that plaintiff must meet the threshold burden to establish that he or she is disabled within the meaning of the Act.  The Court stated:

> An individual is "disabled" if he (or she) has (1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) if he (or she) is regarded as having such an impairment.  29 U.S.C. § 706(8)(B; 29 C.F.R. § 1613.702(a); 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

"Substantially limits" means that the employee is either unable or significantly restricted in the ability to perform a major life activity that the average person in the general population can perform. 29 C.F.R. § 1630.2(j)(1).  <u>Toyota Motor Mfg., KY, Inc. v. Williams</u>, 534 U.S. 184 (2002).

Plaintiff has submitted evidence that her fibromyalgia substantially limited her major life activity of walking.  Her doctor provided notice to her employer in April 2000 that plainitff needed to sit 10 minutes per hour and to avoid lifting in excess of

8

ten pounds.   Further, there is evidence of comments from plaintiff's supervisors concerning plaintiff's physical condition from which a jury could infer that the defendant regarded plaintiff as disabled.  For purposes of deciding the defendant's motion for summary judgment the Court finds that plaintiff is a qualified individual with a disability.

The ADA prohibits discrimination against a qualified individual with a disability.   42 U.S.C. §12112(a).  To prevail on her disability discrimination claim plaintiff must either present direct evidence of discrimination or use the burden shifting method provided in McDonnell Douglas v. Green, 411 U.S. 792 (1973).  Under the direct method of proof, a plaintiff can use either direct or circumstantial evidence to meet her burden of proof.   Direct evidence is an admission by the decision-maker that his or her actions were based upon the prohibited animus.  Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003).  A plaintiff can prevail under this method by presenting circumstantial evidence that would allow a jury to infer intentional discrimination by the decision-maker.  Rhodes v. Ill. Dep't of Transp., 359 F. 3d 498, 504 (7th Cir. 2004).

The following comments by plaintiff's supervisor Jeff Blease in 2002 and 2003 raise an inference that the defendant's decision to terminate plaintiff in 2005 could have been based on her disability.  Blease wrote: "Sue we really need to look at your

physical condition and see what we can do to make you more comfortable but at the same time get the job duties done and service our customers;" and "we need you to be a little more upbeat and try to forget about those bad feet and aching back...".   In addition in 2004 Robson wanted plaintiff to limit her breaks to one every four hours when plaintiff's medical restrictions requires a break once an hour.   A jury might be able to infer intentional discrimination from these facts.

To prevail on a disability discrimination claim using the indirect method of proof plaintiff must first establish a *prima facie* case of discrimination.   She must show that she was a member of a protected class, that she was performing her job satisfactorily, she suffered an adverse employment action and employees not in the protected class who were similarly situated were treated more favorably.   Morrow v. The Wal-Mart Stores, Inc., 152 F. 3d 559, 561 (7th Cir. 1998).

Plaintiff has shown that she was disabled and that she suffered an adverse employment action.   It is disputed whether she was performing her job satisfactorily.   Plaintiff's performance reviews changed significantly for the worse when Robson became her supervisor.   This raises an inference that Robson's evaluation of plainitff could have been based on facts other than her performance.

It is also disputed whether similarly situated employees who were not disabled were treated more favorably. Plaintiff has submitted evidence that raises a factual dispute concerning whether her co-worker April who was not disabled was treated more favorably at least on one occasion concerning a disciplinary report. A genuine issue of material fact remains as to whether plaintiff could demonstrate a *prima facie* case of disability discrimination.

Were plaintiff to have demonstrated a *prima facie* case the burden shifts to defendant to articulate a non-discriminatory legitimate reason for plaintiff's termination. Plaintiff would then have to prove that the reason was pretextual. <u>Id</u>.

Defendant states that plaintiff was terminated because of her poor performance. Plaintiff's supervisor's comments about her disability could raise an inference that the decision to terminate plaintiff was based on her disability. In addition, the notes on the customer complaints in plaintiff's personnel file raise an inference that the defendant was trying to find a pretextual reason to terminate plaintiff and that her disability could have been the real reason for her termination.

There remains a factual dispute concerning pretext. Defendant's motion for summary judgment on plaintiff's disability discrimination claim will be denied.

Plaintiff claims that her employment was terminated by defendant Kwik Trip because of her age. She argues that there is

11

direct evidence of age discrimination because her co-worker Diane
Ballweg believed that she and plaintiff were terminated by Robson
because of their age.   This is not an admission by the decision
maker Robson that her decisions were based on age.   Further,
Ballweg's belief is not sufficient to support an inference that
Robson's decision was based on age.   Plaintiff has not submitted
direct evidence of age discrimination.

     To prevail on her age discrimination claim using indirect
method of proof plaintiff must first establish  establish a <u>prima
facie</u> case of age discrimination.   Plaintiff must show she was age
forty or older, that she was performing her job according to the
employer's legitimate qualifications, that she was terminated and
that younger employees were treated more favorably.   <u>Gordon v.
United Airlines</u>, 246 F.3d 878, 885-886 (7th Cir. 2001).

     Plaintiff has shown that she was age forty or older and that
she was terminated.   The undisputed facts indicate that until
Robson became plaintiff's supervisor in June 2004 she was meeting
her employer's legitimate expectations.   Plaintiff disputes that
the defendant's expectations after June 2004 were legitimate.
Plaintiff also disputes that she was treated the same as younger
employees.   Specifically, she argues that her younger co-worker
April was treated more favorably by Robson.   A genuine issue of
material fact remains as to whether plaintiff can establish a *prima
facie* case of age discrimination.

Were plaintiff to have demonstrated a *prima facie* case the burden shifts to defendant to articulate a non-discriminatory legitimate reason for plaintiff's termination.  Plaintiff would then have to prove that the reason was pretextual.  Id.

Defendant contends that plaintiff was terminated because of her poor performance.  Plaintiff has the burden to show that this reason was pretextual for age discrimination.  Plaintiff contends that Robson's criticisms of plaintiff's performance were pretextual for age discrimination.  The notes on the customer complaints in plaintiff's personnel file certainly raise an inference that Robson was trying to find a pretextual reason to terminate plaintiff and that her age could have been the real reason for her termination.

There remains a factual dispute concerning pretext. Defendant's motion for summary judgment on plaintiff's age discrimination claim will be denied.


ORDER

IT IS ORDERED that defendant's motion for summary judgment is DENIED.

Entered this 29th day of November, 2007.

BY THE COURT:

/s/
_____
JOHN C. SHABAZ
District Judge